here, Lee versus was Lynch, but it's one day. Good morning, your honors. My name is Gallup Dungana, and I represent the petitioner in his petition for review of the decision of the Board of Immigration Appeals that denied him his application for asylum. There is no dispute in this case regarding the credibility of the petitioner or his testimony. The main issue here is whether the harm experienced by the petitioner amounts to persecution or is simply harassment. Since this court has consistently held that the difference between harassment and persecution is necessarily one of degree that must be decided on a case by case basis. I will start by giving a very brief introduction of the case. In this case, the petitioner is seeking asylum as a spouse of a victim of China's coercive population control policy. His wife was sterilized after the birth of their second child since the sterilization procedure was not done properly. She became pregnant again for the third time. The couple were very happy and tried to hide the pregnancy from their government. Unfortunately, the pregnancy was discovered after six months and forcefully aborted. The petitioner tried to prevent the family planning officials from taking his wife for abortion. The petitioner was unsuccessful. He was beaten, arrested, and detained for resisting the abortion. All right, now, I think you can assume we've read the record, so we know the facts. So you have to show that that chain of circumstances satisfies our holding in Lynn for him to have a claim because he can't rely just on his wife's forced abortion. And that might also implicate our decision in Beskovic versus Gonzalez, where there's a beating and an arrest. So tell us why you think the agency made a mistake under our law, under our precedent. I think the BIA, first of all, misapplied this court's ruling in Lynn versus Holder. Unlike Mr. Lynn, like Mr. Liu, who did not allege any mistreatment during his detention, the petitioner in this case was beaten during his interrogation while he was detained. But there is a different point I wanted to emphasize, which I think is very important and also consistent with this court's holding in other similar cases. That any beating that occurs in the context of an arrest or detention may constitute a persecution. It is therefore important to also ask the following two questions before deciding whether this physical mistreatment amounted to persecution, which unfortunately the Immigration Court and the BIA both did not do. The first is- They did it all or they got it wrong? Or at least they got it wrong, it's not in their decision. Okay, so they didn't explain that. They didn't explain that. And the first is, did the abuser act with impunity? And the second question would be, was there an absence of protection to the victim? Let me ask you something that goes back to the beginning. You may be right about the law, but I'm curious why you said there's no question about the credibility before the immigration judge. The immigration judge did say, I find that response credibility is problematic. And he gave two different explanations, then goes into why it was problematic. Don't we have to defer somewhat to that credibility conclusion of the immigration judge, even as to how he was, your client, was harmed in connection with opposing the abortion policy? I didn't do that only because, Your Honor, the Board of Immigration Appeals did not even address that matter. And summarily concluded that they didn't have any issue with credibility. And they moved forward just saying that the collective experience of the petitioner did not amount to persecution. And they just cited the decision of Liu versus Holder. And our argument here is, and also going back to our facts. You say the BIA didn't address the credibility? Yeah, if you look at. I didn't see that with the BIA one way or the other. Did we review for clear error the findings of fact including the determination of credibility made by the immigration judge? Was there something specific about this timing issue of when he was taken into custody and beaten up in connection with his wife's situation? But what the BIA basically mentioned in that decision, Your Honor, was although the respondent was kicked when he was arrested for resisting the abortion and being interrogated during his two-day detention, he has not established that the physical mistreatment he experienced, which caused a muscle spasm and swelling, that did not result in persecution, even when considered in the aggregate. And that is how they move forward. Do you think they're crediting his testimony? You're saying he was truthful, is that right? Yes, Your Honor. Because I think the issue here is whether this amounted to persecution or whether this amounts to simple harassment. I think that is the issue before this court. Did he leave China after these events happened and then return? No, he hasn't done that. And going back to our facts, Your Honor, we know that the abuser in this case were government authorities. They were local police and family planning officials. The BIA in this case simply characterized the petitioner's physical mistreatment at the hands of these authorities as not sufficiently severe to rise to the level of persecution. The BIA made a mistake here by simply failing to understand that some authorities, that the same authorities that caused muscle spasm and swelling were also capable of causing broken limbs if the petitioner had continued with his opposition. It is also obvious from this record that the petitioner did not have any access to a higher authority where he could go for redress. Both he and his wife did not want to have their pregnancy aborted. That is why the pregnancy was discovered only after six months. If the petitioner had access to redress, it is very likely that he would have challenged his detention, his beatings, the fines, and even the abortion. And this court has always held since their decision in Beskovic versus Gonzalez that any minor beating may constitute harassment when inflicted by a non-government entity. But in- He didn't, I asked you whether he left the country and you said no. But he didn't leave until five years after this incident. That is correct, but he didn't come to this country. He didn't leave for China after he came to America and filed for asylum. Well, I'm looking at page 11 of the IJ's report. That's JA 46, I think, of the record we have. And it says he traveled abroad, and particularly he returned to China. He did not leave the country for another five years. Was that a mistake when it said he left China and then came back? He left China, Your Honor, but he didn't come to America. I misunderstood your question. Where did he go? It was very likely local travel outside of China. And where's his wife? His wife is still in China. He hasn't seen his family for 20 years. Well, you see, the circumstances here raise concerns because she's the one who was forcibly aborted, right? Yes, Your Honor. And she does not flee, and he does not flee for five years, right? That is correct, Your Honor. And you think the error is that they didn't take into account that when he opposed his wife's abortion, he was beaten while he was in prison? And he was beaten by the same authorities who could have done him even greater harm. But he had no choice but to basically walk away with minor beating, than living with a more serious condition. And all these individuals- Past persecution gives a presumption of future persecution, right? Yes. And that he would be frayed, that if he returned to China, he would be persecuted. That is correct, Your Honor. But a lot of people, they just spend their lives in silence because they have no way of fleeing the country and their family members are there. What was, since there was no action taken against him for five years, would that rebut the presumption that that beating in prison was going to result in future persecution? No, Your Honor. A lot of people who are victims of persecution are just silent victims and they continue with life until they have access to other options. And he didn't have any such access. All right, thank you. Why don't we hear from the government? Good morning, Your Honors. Rob Stalzer on behalf of the Attorney General. I think you put your fingers on it, Your Honors. The issue here is whether the evidence compels the conclusion that this particular beating must have been so severe that it constituted persecution. Before we get to that, don't we have a problem that what happened to him in prison and all of that was not analyzed according to the standards we set in Beskovic versus Gonzalez? I think they were analyzed because the immigration judge and the board were aware of Beskovic and aware, of course, that this beating took place within the confines of the family planning authority. Well, because they said so when they were recounting the facts. But there's no analysis that is required by Beskovic. It just eluded them. It didn't do it. It's their responsibility in the first place because it seems to me this paradigm is what Beskovic has points toward. Someone who's brought in by authorities, beaten by authorities, has no recourse, sends a message. Right, and then Beskovic commands that to qualify for asylum, the persecution of the harm in custody that has to be analyzed has to be sufficiently severe. I wouldn't like this to happen to me. This, I mean, cop slap, you're incarcerated, you're helpless. You don't know what's going to happen to you next. The authorities come in and they start beating you. I mean, they don't have to break your jaw or break your skull to send you a message. The message is loud and clear. And sometimes other inferences may be possible, but that was the point of Beskovic. You've got to figure out, you've got to engage on the significance of being beaten up by officials in custody. Right, and like I said, I think we know that the immigration judge did that because of the recounting of the facts and the consideration that this was in custody. But of course, also the consideration of what followed, because the immigration judge- There's a difference between the facts and the analysis that you apply to the facts. I don't gainsay that he knew the facts, but it's not at all clear from here that he just did what he was supposed to do according to our precedent. But the immigration judge can only apply the facts that he's told. Petitioner didn't go further to testify, and that was the point of our briefing, was simply that petitioner has to plead or to express such facts sufficient that the immigration judge can conclude that the beating was so severe. The immigration judge doesn't cite any cases. The BIA does cite cases that are informing its decision, and Beskovic isn't one of them. And what neither of them seem to engage in is the part of Beskovic which says, even a minor beating or any physical degradation may rise to the level of persecution if it occurred in the context of an arrest or detention on the basis of a protected ground. Now, no one suggested that this fit or didn't fit within that model. And if it did fit, why other circumstances would weigh differently. But our concern is that, our task is to make sure that the correct standard was applied. And to the extent we have a doubt, we're asking you why we shouldn't have that doubt when there's no citation to Beskovic and no recognition of that part of the opinion. Help us out. Okay, because in this case, this case looks more like the cases in which the court has concluded that the harm wasn't persecutory. The board, I think, was focused on whether or not this harm was sufficiently severe. And looking for these facts. Exactly, they focused on the severity, and Beskovic says that's not the only concern. I'm pretty sure what Beskovic says is that the custodial part of the beating, the fact that you're in the government's custody, informs severity. Which is what the board- What do you mean, informs severity? Well, what you were talking about, Your Honor, how when you're in the custody of a police or the family planning authorities and you're beaten, they're sending you a message that has to go to severity, which is what the board was investigating here. They wanted to know, he was beaten with a baton, but he sought a regular checkup. Never describes what medical treatment he received or whether this was, again, the severity of that beating. And why that then meets his burden to demonstrate that he was persecuted. Well, but the other thing Beskovic says is, does this happen because of protected grounds? So, you know, if you got picked up as a petty thief and got smacked around in jail, that might not be something that we would approve, but it might not rise to the level of persecution, but here, it's that he's taken into custody because he has opposed his wife's sterilization. And now, while he's there, he's beaten, and the concern is that it just doesn't seem that these pieces that were identified in Beskovic were discussed by the agencies. I think we have to be careful not to shift a burden here, Your Honor. It is the petitioner's burden to bring such evidence and facts that can conclude- Which of the facts in that part of Beskovic that I quoted to you were not satisfied here? I would have thought that all of them were, and that's the concern. Well, again, because they're not ignoring the fact that he's in custody because he was resisting the wife's forced abortion. How can you read their minds? The only way you know what they're doing is what they say, and certainly the only way we know what they're doing is what they say. And if they make no reference to a specific controlling case, the inference that comes to us is they just dropped the ball on it. Well, I think we know that because they do- They didn't tell us what their conclusions were, and they're the specialized agency. I mean, we're not supposed to have to do their work for them. Well, they do reference the motive here, right? The board does say he was resisting the abortion. Yeah, that's step one of four steps. And beaten while in custody and interrogated during the two-day detention. Again, when I say that they were aware of this, I think we shouldn't elevate formalism over the fact that they knew he was in custody and they knew that this was the purpose of having him in custody. Yeah, so when you know that, you go to Besovic to figure out whether there was persecution. It's a simple path. You look at severity, right? That's what the board has to find out is whether this is- Besovic is more nuanced than that. You look at several factors. You yourself cite us, I believe, in your, or the BIA, not you, the BIA, cites I-Feng Yuan. And that's the case where the court said in dictum that minor beatings and brief detention do not amount to persecution. Besovic specifically says that that's dictum and pronounces its own, as Judge Parker says, more nuanced standards. So that's the concern. They're citing a case that if they applied that standard, they were applying dictum rather than the controlling law. All right. Do you disagree with the factual circumstances of his testimony on 103 of the appendix? He describes what happens when they came to get his wife. I was at home when she was taken. What did they do to you? They kicked me, I fell to the ground, then they took me to the village committee. What happened there, I was in the detention room in a second day interrogation. I was detained for two days. I was arguing, I was asking that it would stop, and I was begging them to release my wife. Did you say earlier that that's unclear in some way, or do you concede that that was? No, I don't believe that's unclear. The board in this case assumed his credibility. What's that? The board in this case assumed his credibility, even though the immigration judge had doubts. So we have to take that as true, then? Yes. Why isn't that persecution? Because it's not sufficiently severe. What? Persecution is an extreme concept. And not every, we know that some custodial beatings do rise to the level of persecution, but not all of them. And it's Petitioner's burden to demonstrate that his. That's not conduct that we would expect to occur in a civilized society. Well, it's the sort of claim that we've seen before, that this court and other courts have said doesn't rise to the level of persecution. You're missing something in that. It's not a beating just alone. It's in opposition to the sterilization or forcible abortion of a woman. And in Lynn, we said that the fact that the wife is forcibly aborted is not alone enough for the husband to claim persecution. He has to claim that there was something more. We didn't say that it has to be enough that for whatever reason it was imposed, it would be persecution. It's that it's the two together. And I think Bescovic is suggesting that something less than the kind of conduct you're denominating as persecution, if coupled with a forced abortion of the wife, can be enough. But what Lynn said was that the ordinary meaning must be given to the terms, including the term persecution, which is, again, what the board was focused on, finding out whether this was actual persecution or not. Right, so when a husband physically gets into a fight with the family planning authorities to try to prevent his wife from being aborted, he's got a claim for persecution even if he's not beaten to a bloody pulp. No, Your Honor, because there isn't a per se rule that you qualify for persecution as long as there's a custodial beating. That's the whole point. It has to be a case by case analysis. It can't just be you resisted and were beaten. One of the facts is that the beating occurred in opposition to abortion. Okay. And this one did, right? You don't dispute that. No, he resisted. That was the finding of the immigration judge that he resisted. Thank you. Thank you. All right. Mr. Dungana, you did not reserve any time for rebuttal, so we're going to take the case under advisement. We have two more cases on our calendar, but they're submitted. So we stand adjourned.